| | | |
|---|---|---|
| Lynn Giglio | * | IN THE |
| 124 Little Florida Road | | |
| Poquoson, VA 23662 | * | UNITED STATES DISTRICT |
| | | |
| Plaintiff, | * | COURT FOR THE EASTERN |
| | | |
| v. | * | DISTRICT OF VIRGINIA |
| | | |
| Huntington Ingalls Industries, Inc. | * | |
| 4101 Washington Avenue | | |
| Newport News, VA 23607 | * | |
| | | |
| Defendant, | * | |
| | | |
|      Serve on Resident Agent: | * | |
| | | |
|      C T Corporation System | * | |
|      4701 Cox Road, Ste. 285 | | |
|      Glen Allen, VA 23060 | * | |

*     *     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT

**COMES NOW**, Lynn Giglio, by and through her attorneys, Paul V. Bennett, Esq. and the law office of Bennett & Ellison, P.C., and hereby sues Huntington Ingalls Industries, Inc. (hereinafter referred to as "HII"), and states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII").

2. This Court has jurisdiction pursuant to the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d) (hereinafter "EPA"), which constitutes an amendment to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* (hereinafter "FLSA").

1

3.      This Court has the authority to adjudicate a claim brought under the Virginia Human Rights Act, as amended, VA. CODE ANN. § 2.2-3900, *et seq.* (hereinafter "VHRA").

4.      Defendant HII is a private entity located in Newport News, Virginia, and is authorized to conduct business in Virginia.

5.      That at all times relevant herein, Defendant employed fifteen (15) or more persons, and is thereby an "employer" within the meaning of Title VII, the EPA, the FLSA, and the VHRA.

6.      In accordance with federal law, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about August 5, 2019, alleging therein sex-based discrimination. The "continuing action" box was checked off and the Defendant was identified as the Respondent.

7.      On or about April 22, 2020, Plaintiff timely filed a second Charge of Discrimination with the EEOC and which amended her first Charge of Discrimination. The "continuing action" box was checked off and the Defendant was identified as the Respondent.

8.      In her April 22, 2020 Charge of Discrimination, Plaintiff asserted additional factual allegations supporting her sex-based discrimination claim and which were substantially related to the allegations raised in her first Charge of Discrimination. Additionally, in her second Charge of Discrimination, Plaintiff added a claim of retaliation, *e.g.*, that she was retaliated against for filing the first Charge of Discrimination with the EEOC on or about August 5, 2019.

9.      On or about August 12, 2020, Plaintiff filed a Complaint with Virginia's Office of Attorney General, Division of Human Rights. Therein, Plaintiff asserted a claim of sex-based discrimination against the Defendant.

10.     On or about December 4, 2020, Plaintiff received a Notice of Right to Sue from the EEOC.

11.     Plaintiff has thereby properly exhausted all of her administrative remedies before filing suit and her lawsuit has been timely filed.

## FACTS COMMON TO ALL COUNTS

12.     Plaintiff is a female and Defendant was aware at all times herein of Plaintiff's sex.

13.     In or about 1994, Plaintiff was hired by Defendant's Newport News Shipbuilding Division (hereinafter "Newport Division") as an Apprentice.

14.     In or about March of 2008, Plaintiff became a Contracts Analyst.

15.     In or about September of 2008, Plaintiff was promoted to Contracts Administrator II.

16.     In or about February of 2012, Plaintiff was promoted to Contracts Administrator III with Newport Division's Contracts & Pricing Department. Since that time, Plaintiff has served as a Contracts Administrator III with said Department and has been assigned to the Newport Division's "Waterfront" location (hereinafter referred to as the "Waterfront").

17.     As a Contracts Administrator III, Plaintiff's job duties include, but are not limited to, negotiating contracts and administering contract performance and execution. Plaintiff has worked on Refueling and Complex Overhaul ("RCOH") contracts for the U.S. Navy, such as the "CVN73 RCOH" contract and/or the "CVN73 RCOH Water Front Quick Circuit."

18. Contract Administrators I-IV have the same essential job responsibilities.

19. From approximately 2015 or 2016 to the end of February of 2019, Fred Caccavale (male), then-employed as "Manager Contracts Administrator III" with the Contracts & Pricing Department, supervised Plaintiff.

20. In or about October of 2018, Jeff Scheiman (male), employed as a Contracts Administrator IV with the Contracts & Pricing Department who served as the Team Lead at the "Waterfront," transferred to a different department.

21. In or about October of 2018, Mr. Caccavale promoted Plaintiff to act as the Team Lead at the "Waterfront." Plaintiff thereby assumed all of Mr. Scheiman's job duties and responsibilities.

22. Plaintiff thereafter performed substantial equal work under the same working conditions as when Mr. Scheiman had operated as the Team Lead. However, she was paid approximately thirty-five thousand dollars ($35,000.00) less per year than when Mr. Scheiman served as the Team Lead.

23. In or about October of 2018, Plaintiff made approximately seventy-three thousand dollars ($73,000.00) per year, whereas Mr. Scheiman made approximately one hundred eight thousand dollars ($108,000.00) per year.

24. When Plaintiff became the Team Lead in or about October of 2018, she acquired Mr. Scheiman's job functions and took over his role as the Team Lead. By way of example, she became the primary point of contact for the "Waterfront location;" she oversaw all aspects of contract negotiations for the "Waterfront Team," including for the "CVN73 RCOH" contract and/or the "CVN73 RCOH Water Front Quick Circuit;" she contributed to the development of new concepts and techniques;

performed assignments with minimal supervision; trained newly hired Contracts Administrators; remained on-call during evenings and weekends (to a greater degree than that previously required of Mr. Scheiman); and she made decisions which had long-lasting impacts on Defendant's operations. Yet, while Mr. Scheiman served as the Team Lead, he was paid approximately thirty-five thousand dollars ($35,000.00) more than Plaintiff.

25.     On or about October 16, 2018, Eric Wishon (male), Hiring Director, advised Plaintiff that she had not been selected for a Contracts Manager position. Josh Smith (male), who was allegedly the best candidate, was chosen for the position.

26.     Shortly thereafter, Plaintiff partook in a "mock interview" with Mary-Ellen Nealy (female), Hiring Director, during which Ms. Nealy told Plaintiff that she deserved to be a Contracts Administrator IV.

27.     In or about October of 2018, Terry Gray (male), a Defendant-employee, became a Contracts Administrator III with the Contracts & Pricing Department at the Waterfront. At that time, he and Plaintiff both reported to Mr. Caccavale.

28.     Plaintiff trained Mr. Gray, and although she had been a Contracts Administrator III since February of 2012, his annual salary was approximately one thousand dollars ($1,000.00) higher than hers. Plaintiff has a Master of Business Administration ("MBA"), whereas Mr. Gray does not have a master's degree. Plaintiff was also required to take evening and weekend work calls whereas Mr. Gray was not.

29.     On or about January 22, 2019, Plaintiff applied for a "Program Cost Control Analyst 4" position and she was subsequently interviewed for the same. About one (1) week later, Alvin Whitlow (male), Hiring Director, told Plaintiff that she did not get the

position allegedly because she was "too aggressive" and "did not play politics." Steven Grizzle (male) was chosen for the position.

30. On or about February 15, 2019, Plaintiff sent an email to Carrie Allen (female), Human Resources Manager. Therein, Plaintiff explained how she had acquired her male co-worker's (Jeff Scheiman) job responsibilities, but notwithstanding the same, he was a Contracts Administrator IV whereas she remained at a lower level as a Contracts Administrator III. Plaintiff thereby protested against sex-based discrimination and Defendant understood Plaintiff's complaint as such.

31. On or about February 18, 2019, Plaintiff applied for a "Manager Contracts Administration III" position and was subsequently interviewed for the same. About one (1) week later, Roger Kelly (male), Hiring Director, told Plaintiff that she was not chosen for the position allegedly because she needed to be "easier" with customers and that she did not have business management experience. John Scarberry (male) was chosen for the position.

32. On or about February 21, 2019, and in response to Plaintiff's February 15, 2019 opposition to unlawful employment practices, *supra*, Ms. Allen told Plaintiff that she had requested "job evaluation information" from upper management.

33. On or about February 22, 2019, Plaintiff told Ms. Allen that she had been dealing with the disparate treatment, as referenced in her February 15, 2019 email, *supra*, for a long time. Plaintiff also stated that she "rolled with the flow out of fear," thereby explaining her fear of retaliation.

34.     On or about February 22, 2019, Mr. Caccavale told Plaintiff that he knew she contacted the Human Resources Department, told her that she was a rude person, and further said that he would not give her a "tap award."

35.     On or about February 22, 2019, Plaintiff met with Amanda Riley-Gross (female), Equal Employment Opportunity ("EEO") Manager, and protested against being paid less than her male co-worker (Jeff Scheiman). Plaintiff thereby once again protested against sex-based discrimination and Defendant understood Plaintiff's complaint as such.

36.     On or about February 25, 2019, Plaintiff spoke with Ms. Allen about being treated less favorably than Mr. Scheiman, and about not being reclassified to Contracts Administrator IV. Plaintiff thereby once again protested against sex-based discrimination and Defendant understood Plaintiff's complaint as such.

37.     Since approximately March 1, 2019, Glenn Parker (male), employed as "Manager Contracts Administrator III" with the Contracts & Pricing Department, has supervised Plaintiff.

38.     From approximately March 1, 2019 to November of 2019, Mr. Parker supervised Mr. Gray.

39.     Prior to his promotion to "Manager Contracts Administrator III," Mr. Parker did not serve as a Contracts Administrator IV; rather, he served as a Contracts Administrator III for about six (6) years before the promotion (whereas Plaintiff has been a Contracts Administrator III since February of 2012).

40.  On or about March 8, 2019, Plaintiff told Ms. Riley-Gross that she believed she was not being paid fairly. Plaintiff thereby once again protested against sex-based discrimination and Defendant understood Plaintiff's complaint as such.

41.  Either on or about February 22 or March 8, 2019, Ms. Riley-Gross admitted to Plaintiff that she should be paid more.

42.  On or about March 15, 2019, Plaintiff expressed her good-faith and reasonable belief to Mr. Parker that she was not being paid overtime despite being entitled to the same.

43.  On or about March 15, 2019, Plaintiff told Ms. Riley-Gross about not being paid overtime and how Mr. Parker wanted her to work overtime without giving her proper compensation.

44.  On or about March 21, 2019, Plaintiff spoke with Ms. Allen about being reclassified from Contracts Administrator III to Contracts Administrator IV.

45.  On or about May 7, 2019, Defendant chose to not reclassify Plaintiff from Contracts Administrator III to Contracts Administrator IV, notwithstanding the fact that her job duties, knowledge, problem-solving skills, level of discretion and latitude, education, and years of experience correlated with the Contracts Administrator IV position. *See also supra*, ¶ 24 (further describing Plaintiff's job).

46.  Like Mr. Scheiman, Plaintiff constitutes an expert in the contracts administration field. Like Mr. Scheiman, she has demonstrated the skill and ability to perform complex tasks, communicate effectively and clearly present technical approaches and findings, develop solutions to complex problems which require ingenuity and innovation, and perform assignments independently without appreciable direction. Like Mr. Scheiman, if Plaintiff makes errors in her judgment, then the Defendant is

very likely to suffer financially. Notwithstanding the same, Defendant denied Plaintiff's request to be reclassified from Contracts Administrator III to Contracts Administrator IV.

47.   Plaintiff has an MBA, whereas Mr. Scheiman (Contracts Administrator IV) does not have any type of master's degree.

48.   Plaintiff and Mr. Scheiman have worked in contracts administration for an equivalent period of time – approximately twelve (12) years for Plaintiff versus about fourteen (14) years for Mr. Scheiman, thereby reflecting a nominal difference.

49.   On or about May 10, 2019, Plaintiff expressed to Ms. Allen that Mr. Parker has treated her unfairly, and that she is afraid of being "ambushed" on May 13, 2019, *infra.*

50.   On or about May 13, 2019, Plaintiff contacted Ms. Allen and opposed the "unjust" treatment she had faced in the workplace. Later that day, Plaintiff met with Ms. Allen and Mr. Parker, at which point they told her that she had not been reclassified from Contracts Administrator III to Contracts Administrator IV. During said conversation, Plaintiff asserted how her male co-worker [Jeff Scheiman] was at a higher level than her despite their having the same job responsibilities. Plaintiff thereby once again protested against sex-based discrimination and Defendant understood Plaintiff's complaint as such.

51.   In or about September of 2019, Plaintiff's annual salary was about seventy-five thousand seven hundred dollars ($75,700.00).

52.   In or about November of 2019, Plaintiff was not chosen for a project with one (1) of Defendant's customers – "Supervisor Ship Building U.S. Navy" – allegedly because

she was "too aggressive." Upon information and belief, including because Defendant previously accused Ms. Giglio of acting aggressively, *supra*, ¶ 29, Defendant told the customer that Plaintiff was "too aggressive" and encouraged the customer to not select Plaintiff for the project.

53.  In or about December of 2019, Mr. Scheiman, who remained a Contracts Administrator IV, returned to the Contracts & Pricing Department. Since then, he has worked alongside Plaintiff at the "Waterfront." Although Plaintiff and Mr. Scheiman have had the same job responsibilities and have performed substantially equal work since that time (*supra*, ¶¶ 24, 45-46), he still receives approximately thirty-five thousand dollars ($35,000.00) more per year than she does.

54.  Both Mr. Scheiman and Plaintiff work with minimal supervision. Like Mr. Scheiman, Plaintiff serves as a consultant to upper management, acts as an external spokesperson for the Contracts & Pricing Department, and acts as an advisor to senior management and customers.

55.  Mr. Scheiman and Plaintiff deal with the U.S. Government client (U.S. Navy) in a substantially equal way. For instance, they both frequently interact with the client, they both deal with the same factual scenarios regarding the client, their work involves the same level of complexity, and they have the same job responsibilities. Mr. Scheiman does not oversee Plaintiff's work performance.

56.  On or about January 31, 2020, Plaintiff received a Level Three (3) performance rating of "Meets Expectations" for 2019. This resulted in a lower pay increase than when she had received a Level Four (4) performance rating of "Exceeds Expectations" for 2018 (she received said rating on or about January 31, 2019).  Had she received a

Level Four (4) rating for 2019, her pay would have increased by at least an additional percentage point.

57.    Mr. Gray received an "Exceeds Expectations" performance rating for 2019, despite having substantially less contracts experience than Plaintiff.

58.    Mr. Scheiman received an "Exceeds Expectations" performance rating for 2019.

59.    In or about March of 2020, John Stefanowich (male), employed by the Defendant as a Contracts Administrator III with the Contracts & Pricing Department, was moved to the Waterfront. Although Plaintiff has trained Mr. Stefanowich, he makes more money than her.

60.    On or about July 28, 2020, and during Ms. Giglio's mid-year performance evaluation, Mr. Parker told Plaintiff that she and Mr. Scheiman performed similar job duties.

61.    At all times relevant herein, Plaintiff met and/or exceeded Defendant's legitimate job expectations.

**COUNT I**
**SEX DISCRIMINATION**
**(Disparate Treatment)**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. § 2000e, *et seq.***

62.    Plaintiff hereby restates and incorporates paragraphs 1 through 61 of this Complaint as though fully set forth herein.

63.    At all times relevant herein, Plaintiff has satisfactorily performed her job duties.

64.    Since about October of 2018, Defendant has paid Plaintiff approximately thirty-five thousand dollars ($35,000.00) less per year than Jeff Scheiman (male). Although Mr. Scheiman's position title is Contracts Administrator IV, he and Plaintiff have

extremely similar job responsibilities, are subjected to the same work standards, they both work at the Waterfront, and they both work with Mr. Parker.

65.    On or about October 16, 2018, Plaintiff learned that she was not selected for a Contracts Manager position. A male was chosen for the position.

66.    As of approximately December of 2018, Terry Gray (male) had a higher annual salary than Plaintiff, despite her having served as a Contracts Administrator III for a longer period of time than him. At that time, Plaintiff and Mr. Gray reported to the same supervisor and worked at the Waterfront.

67.    On or about January 22, 2019, Plaintiff was denied a promotion, and a male was chosen for the position.

68.    On or about February 18, 2019, Plaintiff was denied a promotion, and a male was chosen for the position.

69.    On or about May 7, 2019, Plaintiff was denied a reclassification from Contracts Administrator III to Contracts Administrator IV, despite performing extremely similar work to Mr. Scheiman who was and still remains a Contracts Administrator IV.

70.    In or about November of 2019, Plaintiff was not chosen for a work project with one (1) of Defendant's customers – "Supervisor Ship Building U.S. Navy," thereby substantially affecting the terms and conditions of her employment with the Defendant.

71.    On or about January 31, 2020, Plaintiff received a Level Three (3) performance rating of "Meets Expectations" for 2019. Had she received a Level Four (4) performance rating of "Exceeds Expectations," she would have received a greater annual salary increase.

72.   Mr. Gray received an "Exceeds Expectations" rating for 2019, despite having substantially less contracts experience than Plaintiff.

73.   Mr. Scheiman received an "Exceeds Expectations" rating for 2019.

74.   That Defendant has carried out the aforementioned acts of discrimination against Plaintiff on the basis of her sex (female) – a protected class under Title VII.

75.   That the aforementioned acts constitute unlawful practices pursuant to Title VII.

76.   That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex (female).

77.   That the unlawful employment practices complained of above were intentional.

78.   That similarly-situated male employees, including, without limitation, Jeff Scheiman and Terry Gray, were not subjected to the same or similar severe adverse employment actions that Plaintiff endured.

79.   That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, emotional distress, humiliation, and mental anguish.

80.   That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT II**
**SEX DISCRIMINATION**
**Equal Pay Act of 1963, as amended**
**29 U.S.C. § 206(d)**

81.   Plaintiff hereby restates and incorporates paragraphs 1 through 61 of this Complaint as though fully set forth herein.

13

82.   It is illegal for an employer to discriminate "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).

83.   Since about October of 2018, Defendant has paid Plaintiff approximately thirty-five thousand dollars ($35,000.00) less per year than Jeff Scheiman (male). Although Mr. Scheiman's position title is Contracts Administrator IV, he and Plaintiff have performed "substantially equal work" which requires "equal skill, effort, and responsibility, and which are performed under similar working conditions." *See* 29 U.S.C. § 206(d)(1).

84.   As of approximately December of 2018, Terry Gray's (male) annual salary was approximately one thousand dollars ($1,000.00) more than Plaintiff's, despite them having performed "substantially equal work" as Contracts Administrators III.

85.   Defendant discriminated against Plaintiff on the basis of her sex, female, by paying different wages for equal work than her similarly-situated male counterparts, including, but not limited to, Jeff Scheiman and Terry Gray.

86.   Plaintiff has thereby established a claim of sex-based wage discrimination under the Equal Pay Act of 1963, as amended.

87.   That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

88.   Because of Defendant's willful violation of the Equal Pay Act of 1963, as amended, Defendant is liable to Plaintiff under 29 U.S.C. § 216(b) for monetary relief including

the wage differential described above, an additional equal amount as liquidated

damages, and reasonable attorney's fees and costs.

89.  Because of Defendant's willful violation of the Equal Pay Act of 1963, as amended,

Defendant is liable to Plaintiff under 29 U.S.C. § 216(b) for the wage differential over

the last three (3) years, and an additional equal amount as liquidated damages. *See* 29

U.S.C. § 255(a).

90.  Liquidated damages are warranted in this matter because Defendant's actions were

not made in good faith and Defendant did not have reasonable grounds to believe that

their conduct was in conformance with the EPA.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT III
## RETALIATION
## (Materially Adverse Actions and Protected Activity Deterrents)
## Fair Labor Standards Act of 1938, as amended
## 29 U.S.C. § 201, *et seq.*

91.  Plaintiff hereby restates and incorporates paragraphs 1-61 of this Complaint as though

fully set forth herein.

92.  The FLSA (as amended, in part, by the EPA) renders it unlawful for employers such

as Defendant "to discharge or in any other manner discriminate against any employee

because such employee has filed any complaint or instituted or caused to be instituted

any proceeding under or related to this Act." 29 U.S.C. § 215(a)(3).

93.  On or about February 15, 2019, Plaintiff sent an email to Carrie Allen (female),

Human Resources Manager. Therein, Plaintiff explained how she had acquired her

male co-worker's (Jeff Scheiman) job responsibilities, but notwithstanding the same,

he was a Contracts Administrator IV whereas she remained a Contracts Administrator

15

III. Plaintiff thereby protested against sex-based discrimination in violation of 29 U.S.C. § 206(d), and Defendant understood Plaintiff's complaint as such.

94.  On or about February 22, 2019, Plaintiff told Ms. Allen that she had been dealing with the disparate treatment, as referenced in her February 15, 2019 email referenced above, for a long time. Plaintiff also stated that she "rolled with the flow out of fear," thereby explaining her fear of retaliation.

95.  On or about February 22, 2019, Mr. Caccavale told Plaintiff that he knew she contacted the Human Resources Department, told her that she was a rude person, and further said that he would not give her a "tap award."

96.  On or about February 22, 2019, Plaintiff met with Amanda Riley-Gross (female), Equal Employment Opportunity ("EEO") Manager, and protested against being paid less than her male co-worker (Jeff Scheiman). Plaintiff thereby once again protested against sex-based discrimination in violation of 29 U.S.C. § 206(d), and Defendant understood Plaintiff's complaint as such.

97.  On or about February 25, 2019, Plaintiff spoke with Ms. Allen about being treated less favorably than Mr. Scheiman, and about not being reclassified to a Contracts Administrator IV. Plaintiff thereby once again protested against sex-based discrimination in violation of 29 U.S.C. § 206(d), and Defendant understood Plaintiff's complaint as such.

98.  On or about March 8, 2019, Plaintiff told Ms. Riley-Gross that she believed she was not being paid fairly. Plaintiff thereby once again protested against sex-based discrimination in violation of 29 U.S.C. § 206(d), and Defendant understood Plaintiff's complaint as such.

99.     On or about March 15, 2019, Plaintiff expressed her good-faith and reasonable belief to Mr. Parker that she was not being paid overtime despite being entitled to the same.

100.    On or about March 15, 2019, Plaintiff told Ms. Riley-Gross about not being paid overtime, and how Mr. Parker wanted her to work overtime without giving her proper compensation.

101.    Plaintiff thus engaged in several legally "protected activities" under the FLSA/EPA because she expressed her reasonable and good faith belief that she was being discriminated against in violation of the EPA, as well as generally not being paid in accordance with the FLSA. *See* 29 U.S.C. § 206(d); 29 U.S.C. § 207; 29 CFR 548. Defendant was thereby put on notice that Plaintiff sought to assert a FLSA claim.

102.    On or about May 7, 2019, Defendant chose to not reclassify Plaintiff from Contracts Administrator III to Contracts Administrator IV.

103.    Plaintiff suffered materially adverse actions by the Defendant subsequent to her "protected activities" in that, among other things, she was denied a reclassification from Contracts Administrator III to Contracts Administrator IV after complaining about FLSA and EPA violations.

104.    The close proximity in time between Plaintiff's legally "protected activities" in February and March of 2019, and subsequent materially adverse actions, including, without limitation, denial of reclassification in early May of 2019, establishes a causal connection between the two (2).

105.    Because of Defendant's willful violation of the FLSA, 29 U.S.C. § 215(a)(3), Defendant is liable to Plaintiff under 29 U.S.C. § 216(b) for monetary relief including

back pay, an additional equal amount as liquidated damages, and reasonable attorney's fees and costs.

106.    Liquidated damages are warranted in this matter because Defendant's actions were not made in good faith and Defendant did not have reasonable grounds to believe that their conduct was in conformance with the FLSA.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT IV
## RETALIATION
### (Materially Adverse Actions and Protected Activity Deterrents)
### Title VII of the Civil Rights Act of 1964
### 42  U.S.C. § 2000e, *et seq.*

107.    Plaintiff hereby restates and incorporates paragraphs 1 through 61 of this Complaint as though fully set forth herein.

108.    On August 5, 2019, Plaintiff timely filed a Charge of Discrimination with the EEOC. Said Charge constitutes a "legally protected activity" under Title VII and was known by Defendant to have occurred.

109.    In or about November of 2019, Plaintiff was not chosen for a project with one (1) of Defendant's customers – "Supervisor Ship Building U.S. Navy" – allegedly because she was "too aggressive."

110.    On or about January 31, 2020, Plaintiff received a Level Three (3) performance rating of "Meets Expectations" for 2019. Had she received a Level Four (4) performance rating of "Exceeds Expectations," she would have received a greater annual salary increase.

111.    Said materially adverse actions subsequent to Plaintiff filing a Charge of Discrimination with the EEOC amounted to illegal retaliation.

112.   That the aforementioned acts of retaliation for complaining of discrimination constituted unlawful employment practices pursuant to Title VII.

113.   That the aforementioned acts of retaliation would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

114.   That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon her filing of a Charge of Discrimination with the EEOC.

115.   That the intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

116.   As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, attorney's fees, and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT V
## SEX DISCRIMINATION
### (Disparate Treatment)
**Virginia Human Rights Act, as amended,**
**VA. CODE ANN. § 2.2-3900, *et seq.***

117.   Plaintiff hereby restates and incorporates paragraphs 1 through 61 of this Complaint as though fully set forth herein.

118.   At all times relevant herein, Plaintiff has satisfactorily performed her job duties.

119.   Since about October of 2018, Defendant has paid Plaintiff approximately thirty-five thousand dollars ($35,000.00) less per year than Jeff Scheiman (male). Although Mr. Scheiman's position title is Contracts Administrator IV, he and Plaintiff have

extremely similar job responsibilities, are subjected to the same work standards, they both work at the Waterfront, and they both work with Mr. Parker.

120.   That Defendant has carried out the aforementioned acts of discrimination against Plaintiff on the basis of her sex (female) – a protected class under the VHRA.

121.   That the aforementioned acts constitute unlawful practices pursuant to the VHRA.

122.   That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex (female).

123.   That the unlawful employment practices complained of above were intentional.

124.   That similarly-situated male employees, including, without limitation, Jeff Scheiman, were not subjected to the same or similar severe adverse employment actions that Plaintiff endured.

125.   That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, emotional distress, humiliation, and mental anguish.

126.   That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Lynn Giglio, Plaintiff, demands judgment against Defendant, Huntington Ingalls Industries, Inc., as follows:

a.   Monetary damages (*e.g.,* lost wages, interest on the same, compensatory damages, liquidated damages, punitive damages, etc.) of $300,000.00;

b.  Prejudgment and post judgment interest;

c.  Award attorneys' fees and litigation costs, including expert witness fees, as allowed
    by law;

d.  And for such other and further relief as this Honorable Court deems just and
    equitable.

Respectfully submitted,

_____/s/_____
Paul V. Bennett, Esq. (Bar No. 33554)
Bennett & Ellison, P.C.
2086 Generals Highway, Ste. 201
Annapolis, Maryland 21401
(410) 974-6000
(410) 224-4590 Fax
pbennett@belawpc.com

*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Lynn Giglio, Plaintiff, hereby demands that this matter be tried by jury.

_____/s/_____
Paul V. Bennett, Esq. (Bar No. 33554)